IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

ESTATE OF WILLIAM HAN MANSTROM-GREENING, by and through Carol J. Manstrom, Personal Representative,

    Plaintiff,

v.

LANE COUNTY; LANE COUNTY PAROLE AND PROBATION; DONOVAN DUMIRE; and GLENN GREENING,

    Defendants.

Case No. 6:18-cv-530-TC

**OPINION AND ORDER**

**MCSHANE, Judge:**

William Manstrom-Greening was 17 years old when, on February 14, 2017, he committed suicide with his father's service weapon. In response to that tragedy, Carol Manstrom, the mother of Mr. Manstrom-Greening, filed the instant action on behalf of her son's estate. Ms. Manstrom brings one substantive due process claim and one state-law wrongful death claim against the father of Mr. Manstrom-Greening, Lane County, and Donovan Dumire. The Court previously allowed both claims to proceed to discovery. At issue now is whether Defendants may, in one form or another, attempt to reduce their share of any potential liability, or avoid liability altogether, by proving that Ms. Manstrom's conduct also contributed to the death of her son. The question is purely a legal one at this still-early stage in the litigation and the Court remains deeply skeptical that the facts will support Plaintiff's claims or Defendants' theory of contribution. Nevertheless, as a matter of law, the Court finds that Defendants may attempt to demonstrate that Ms.

Manstrom's conduct also contributed to her son's death. Any discovery on the defense, however, will be deferred until after the Court resolves dispositive motions on the principle claims.

## BACKGROUND

The parties are familiar with the facts as alleged and the Court offers only a brief summary here. On the morning of February 14, 2017, William Manstrom-Greening reached for a semi-automatic pistol and took his own life. First Am. Compl. ("FAC") ¶ 13, ECF No. 19. Mr. Manstrom-Greening was staying at his father's home when the incident occurred and found the weapon sitting on a desk in the living room. FAC ¶ 11. The weapon belonged to his father, Glenn Greening, who was an active-duty Parole and Probation Office for Lane County. FAC ¶¶ 8, 13. Mr. Greening was authorized to carry the pistol as his service weapon and required to retain possession while away from work. FAC ¶¶ 9, 10. Upon returning home from work on February 13, 2017, Mr. Greening placed the weapon, loaded and unsecured, on his living room desk. FAC ¶ 11. The weapon remained there until used by his son the next morning. FAC ¶¶ 11-12.

On March 3, 2018, Mr. Manstrom-Greening's estate, by and through his mother, Carol Manstrom, filed the instant suit. The FAC names Lane County, Mr. Greening, and Mr. Greening's supervisor, Donovan Dumire, as defendants. FAC ¶¶ 4-6. As to each defendant, Plaintiff brings one claim pursuant to 42 U.S.C. § 1983 for violations of the decedent's right to substantive due process based on a danger creation theory of liability. FAC ¶¶ 24-29. Mr. Greening is named in his individual capacity and Mr. Dumire is named in his individual and official capacities. FAC ¶¶ 24-29. Plaintiff also asserts one state-law wrongful death claim against Mr. Greening and Lane County based on a negligence theory of liability. FAC ¶¶ 30-38.

In their response, Lane County and Mr. Dumire assert the affirmative defense of contributory negligence and bring crossclaims against Ms. Manstrom for contributory negligence

and contribution. County Defs.' Answer to Am. Compl. ("County Answer") ¶¶ 36-53, ECF No. 35. Mr. Greening, in his response, also asserts the affirmative defenses of contributory negligence and unclean hands. Greening Answer to Am. Compl. ("Greening Answer") ¶¶ 41, 44, ECF No. 19. Lane County and Mr. Dumire—but not Mr. Greening—previously moved to dismiss the FAC, arguing that Plaintiff failed to state a claim under Section 1983. On December 12, 2018, the Court adopted Magistrate Judge Thomas M. Coffin's recommendation and denied that motion.

There are currently three motions pending before the Court. First, Lane County and Mr. Dumire move to permissively join Ms. Manstrom as a co-defendant pursuant to Fed. R. Civ. P. 20(a)(2) and assert against her their already-pleaded crossclaims of contributory negligence and contribution. Second, Plaintiff moves to strike Lane County and Mr. Dumire's crossclaim for contributory negligence—which it interprets as a counterclaim for wrongful death—and their affirmative defense of contributory negligence.[1] Finally, Plaintiff moves pursuant to Fed. R. Civ. P. 12(c) for partial judgment on the pleadings as to Mr. Greening's affirmative defenses of contributory negligence and unclean hands.

This case was originally assigned to Magistrate Judge Coffin. It was reassigned to this Court on March 1, 2019. Prior to the case being reassigned, Magistrate Judge Coffin issued a Findings and Recommendation ("F&R") addressing Defendants' motion for permissive joinder and Plaintiff's motion to strike. In his F&R, Judge Coffin recommended that the Court grant Plaintiff's motion to strike and deny Defendants' motion to permissibly join Ms. Manstrom. Defendants timely filed objections and Plaintiff subsequently filed her motion for judgment on the pleadings. On March 11, the Court heard oral arguments on all three motions and preliminarily

---

[1] Plaintiff's motion to strike was included as part of her response—incorrectly styled as a "reply"—to Defendants' motion for permissive joinder. Although Local Rule 7-1(b) states that "[m]otions may not be combined with any response," the Court will consider the motion because it raises virtually the same issues as the two other motions and does not prejudice Defendants.

Page 3 – OPINION AND ORDER

denied the motion for joinder. Since the motions are related and involve virtually the same issues, the Court addresses them in a single Opinion and Order.

## STANDARDS

A motion for judgment on the pleadings "challenges the legal sufficiency of the opposing party's pleadings." *Morgan v. Cty. of Yolo*, 436 F. Supp. 2d 1152, 1154–55 (E.D. Cal. 2006), *aff'd*, 277 F. App'x 734 (9th Cir. 2008). Under Fed. R. Civ. P. 12(c), a party may move for judgment on the pleadings "after the pleadings are closed—but early enough not to delay trial." A motion for judgment on the pleadings will only be granted if "there is no issue of material fact in dispute," *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009), and "the moving party is entitled to judgment as a matter of law." *Geraci v. Homestreet Bank*, 347 F.3d 749, 751 (9th Cir. 2003) (citation and quotations omitted). Similarly, under Fed. R. Civ. P. 12(f), a party may move to strike any affirmative defense that is, *inter alia*, "insufficient." A plaintiff must file her motion to strike within 21 days after being served with the defendant's answer. *See* Fed. R. Civ. P. 12(f)(2). In the case of both types of motion, an affirmative defense is adequately pleaded if the answer provides a plaintiff with "fair notice of the defense." *Simmons v. Navajo Cty.*, 609 F.3d 1011, 1023 (9th Cir. 2010) (citation and quotation omitted), *abrogated on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc). "[T]he fair notice required by the pleadings standards only requires describing the defense in general terms." *Kohler v. Flava Enters., Inc.*, 779 F.3d 1016, 1019 (9th Cir. 2015) (citation and quotations omitted).

## DISCUSSION

The pending motions, although superficially distinct, raise two common issues. The first issue concerns the proper procedural mechanism by which a defendant may attempt to reduce her share of potential liability relative to the fault of a plaintiff when the plaintiff is acting as a personal

representative and beneficiary of a decedent's estate. The second issue concerns whether the defendants here may, based on their pleadings and as a matter of law, attempt to reduce their share of any potential liability, or avoid liability altogether, by proving that Ms. Manstrom's conduct also contributed to the death of her son. The Court addresses each issue in turn.

I. Proper Procedural Mechanism.

Defendants attempt to limit their share of potential liability by pleading crossclaims for contributory negligence and contribution against Ms. Manstrom, pleading an affirmative defense of contributory negligence against Ms. Manstrom, and by moving to join Ms. Manstrom as a co-defendant. As discussed below, pleading the affirmative defense of contributory negligence is the only procedural mechanism by which Defendants may attempt to limit their share of liability.

To begin, a defendant may not permissively join a co-defendant under Fed. R. Civ. P. 20. *Hefley v. Textron, Inc.*, 713 F.2d 1487, 1499 (10th Cir. 1983) ("[A] defendant cannot use rule 20 to join a person as an additional defendant."); 4 Moore's Federal Practice, § 20.02(b)(i) (Matthew Bender 3d ed. 2018) ("Although defendants may be able to alter the plaintiff's structure by impleading third-party defendants, or by moving for the joinder of absentees who satisfy Rule 19, defendants have no right to insist that a plaintiff join all persons who might be joined under permissive party joinder requirements."); *see also Simpson v. Alaska State Comm'n for Human Rights*, 608 F.2d 1171, 1174 (9th Cir. 1979) ("A plaintiff ordinarily is free to decide who shall be parties to his lawsuit."). Defendants' motion for joinder is therefore denied.

In addition, because a crossclaim may only be asserted against a co-party, and because Ms. Manstrom cannot be permissively joined as a co-party by Defendants and has not been joined as a defendant by Plaintiff (i.e., Ms. Manstrom in her representative capacity), Defendants' crossclaims for contributory negligence and contribution must also fail. *See* Fed. R. Civ. P. 13(g) (emphasis

added) ("A pleading may state as a crossclaim any claim by one party against a *coparty*."); *see also Augustin v. Mughal*, 521 F.2d 1215, 1216 (8th Cir. 1975) (citation omitted) ("Co-parties are persons on the same side in the principal litigation."); *Stahl v. Ohio River Co.*, 424 F.2d 52, 55 (3d Cir. 1970) (same). Plaintiff's motion to strike Defendants' crossclaims is therefore granted.

Further, even if the Court were to construe the crossclaims as counterclaims, they would still be improper. *See* 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1431 (3d ed. 2010) ("[T]he mislabeling of a properly asserted crossclaim or counterclaim will not prejudice the pleader and typically the court will treat the claim as if it were brought under the appropriate subdivision of Rule 13."). A counterclaim is a claim brought against an "opposing party." Fed. R. Civ. P. 13(a)-(b). "It is well-established that when a party sues in her representative capacity, he is not subject to counterclaims against him in his individual capacity." *In re Adbox, Inc.*, 488 F.3d 836, 840 (9th Cir. 2007). Here, Ms. Manstrom is *not* the opposing party, at least not in her *personal capacity*, which is the capacity in which Defendants seek to hold her liable.[2] A counterclaim against Ms. Manstrom would therefore be improper.

A party may, moreover, only assert a counterclaim if her underlying claim has "matured." Fed. R. Civ. P. 13(e) (describing procedure for asserting counterclaim which "mature[s]" *after* original pleading). As several courts have held, a claim for contribution is not a mature claim "because it is contingent upon a verdict and judgment establishing liability." *Stahl*, 424 F.2d at 55. The Court finds those cases persuasive and adopts their reasoning here. Similarly, contributory negligence is an affirmative defense, not a standalone claim for relief. Fed. R. Civ. P. 8(c); *see also Fed. Deposit Ins. Co. v. F.S.S.S.*, 829 F. Supp. 317, 322 n.11 (D. Alaska 1993) ("Affirmative

---

[2] Some courts have suggested that this rule is inapplicable when, as here, the representative will personally benefit from the lawsuit, *see, e.g.*, *Chambers v. Cooney*, 537 F. Supp. 2d 1248, 1253 (S.D. Ala. 2008), but the parties do not raise that argument and, as discussed below, the more straightforward approach is to consider Defendants' theory of shared liability as an affirmative defense.

Page 6 – OPINION AND ORDER

defenses challenge . . . underlying liability. Counterclaims are separate claims independent of the plaintiff's underlying claim."). As a result, neither theory would be appropriately presented as a counterclaim. And in so far as Defendants' "claims" for contributory negligence might be construed as standalone wrongful death counterclaims, Defendants are barred from bringing such claims. *See Brown v. Hackney*, 208 P.3d 988, 992 (Or. Ct. App. 2009) (citation omitted) ("Only a personal representative of the decedent's estate may prosecute a wrongful death suit . . . .").

Instead, to have their liability reduced in proportion to the fault of Ms. Manstrom, Defendants must rely on their already-pleaded affirmative defense of contributory negligence. Although, as noted above, the general rule is that a party who sues in her representative capacity may not be held at fault in her individual capacity, *cf. Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 543 n.6 (1986) ("Acts performed by the same person in two different capacities are generally treated as the transactions of two different legal personages."), the Oregon Court of Appeals has held that the affirmative defense of contributory negligence is available to defendants in wrongful death actions where the decedent's personal representative is also a beneficiary of the lawsuit. *Robinson v. Children Servs. Div.*, 914 P.2d 1123, 1128 (Or. Ct. App. 1996).[3] As such, to

---

[3] A more recent case from the Oregon Court of Appeals, *Son v. Ashland Cmty. Health Servs.*, 244 P.3d 835 (Or. Ct. App. 2010), seemingly called the holding of *Robinson* into question. *Son*, however, expressly declined to overrule or otherwise abrogate *Robinson*. 244 P.3d at 515 ("[W]e need not decide the issue that was presented in *Robinson*."). Further, in so far as *Son* touched on the holding of *Robinson*, the court simply noted a change to Oregon's contributory negligence statute post-dating *Robinson*. *Id.* Specifically, whereas the comparative fault statute previously allowed a factfinder to compare a defendant's fault against that of "the person seeking recovery," the statute now instructs that a defendant's fault be compared against that of "the claimant." *Compare* ORS 31.600(2) *with* ORS 18.470 (1993). This was important, the *Son* court implied, because *Robinson* had concluded that designated beneficiaries under Oregon's wrongful death statute are "persons seeking recovery." 244 P.3d at 514-15 (citing *Robinson*, 914 P.2d at 1126-28). It is doubtful, however, that the term "claimant" is so comparatively narrow that it would not also encompass a designated beneficiary suing under the wrongful death statute. Moreover, much of the reasoning from *Robinson*—which focused on the nature of the wrongful death statute rather than the comparative fault statute—is unaffected by the change in language. 914 P.2d at 1126-28; *see also id.* at 1128 n.6 (emphasis added) (noting that Oregon's comparative fault statute expressly states that "it is not intended to . . . *abolish any defense*").

Page 7 – OPINION AND ORDER

the extent Defendants wish to reduce their share of any potential liability relative to the fault of Ms. Manstrom, they must rely upon the affirmative defense of contributory negligence.[4]

II. Availability of the Defense.

The remaining issue is whether, based on Defendants' pleadings and as a matter of law, Ms. Manstrom may share in any potential fault for Mr. Manstrom-Greening's death. Although the parties cite no Oregon case on point, and the Court can find none, the general rule is that "suicide constitutes an intervening force which breaks the line of causation from the wrongful act to the death." 11 A.L.R.2d 751 (originally published in 1950). That general rule, however, is subject to at least one applicable exception. Specifically, courts have allowed civil liability to attach where a tortious act is "found to have caused a mental condition in the decedent that proximately resulted in an uncontrollable impulse to commit suicide," *McLaughlin v. Sullivan*, 123 N.H. 335, 337–38 (1983), or the "defendant intended, by his conduct, to cause serious mental distress or physical suffering . . . and such mental distress is shown by the evidence to be a substantial factor in bringing about the suicide," *Tate v. Canonica*, 5 Cal. Rptr. 28, 36 (Ct. App. 1960) (citing Rest. Torts §§ 279-80). Indeed, the same Oregon case which held that a defendant may plead contributory negligence against the beneficiary of a decedent's estate, *Robinson*, was a wrongful death action brought by the mother of a child who had died by suicide.[5] *See* 914 P.2d at 1124.

Defendants' contributory negligence theory tracks the outlined exception. Lane County and Mr. Dumire allege in relevant part that any harm to decedent was "caused by . . . Carol

---

[4] The Court also notes that, because the personal representative of a decedent's estate is not party to a lawsuit in her individual capacity, a defendant might also be able to seek contribution from her individually by naming her in a third-party complaint. *See* Fed. R. Civ. P. 14(a)(1). Since parties haven't raised that possibility—and the practical effect of pleading contributory negligence is largely same—the Court declines to explore that argument here.

[5] In *Robinson*, the mother had lost at trial and appealed only on the grounds that "trial court erred in allowing the jury to consider [her] comparative fault . . . in contributing to decedent's death," but the appellate court, in sustaining the jury's majority allocation of fault to the parents, never questioned that a comparative fault defense was permissible as a matter of law or on the facts of the case. *Robinson*, 914 P.2d at 1124, 1126-28.

Page 8 – OPINION AND ORDER

Manstrom by her negligent or intentional conduct related to decedent's mental state." County Answer ¶ 41. They further allege that Ms. Manstrom "directly contributed to the death of decedent through her . . . infliction of physical and mental trauma." County Answer ¶¶ 50-51. Similarly, Mr. Greening alleges that "any harm to plaintiff's decedent was caused by the conduct of . . . the plaintiff herself by her negligent or intentional conduct related to the decedent's mental state" and that Ms. Manstrom's "behavior toward the decedent was a contributing factor to the decedent's mental state which lead to his suicide." Greening Answer ¶¶ 41, 44. To be clear, the Court is deeply skeptical that Defendants will be able to prove the extreme facts necessary to prevail on these theories. That skepticism extends equally to Plaintiff's underlying claims. Nevertheless, *purely as a matter of law*, Ms. Manstrom could have engaged in conduct which would be a partial or complete defense to Defendants' liability in the wrongful death action.[6]

Defendants' affirmative defense is also adequately pleaded. Contrary to Plaintiff's suggestion, the "plausibility" pleading standard applicable to claims under Fed. R. Civ. P. 8(a)(2)—as set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)—does not apply to affirmative defenses under Fed. R. Civ. P. 8(c). Although the Ninth Circuit has not expressly analyzed the issue, it has, after the decisions in *Twombly* and

---

[6] Ms. Manstrom relies on *Son* to argue that she cannot be comparatively at fault because her alleged conduct (i.e., catalyzing the decedent's suicidal ideations) could not have contributed to the acts for which she seeks to hold Defendants liable (i.e., making the suicide weapon available). Plaintiff's reliance on *Son* is misplaced. In *Son*, the Oregon Court of Appeals held that "a valid defense of comparative fault in *medical malpractice cases* requires that the plaintiff's negligent conduct relate and contribute to the negligent treatment." 244 P.3d at 843 (emphasis added). This principle, the court explained, applied with equal force to the conduct of a statutory beneficiary, rendering them immune to a comparative fault defense when their conduct contributed to the medical condition for which treatment was required, but not the actual rendering of negligent care. *Id.* at 513. The court expressly limited its reasoning the medical malpractice context, even explaining that its holding would not have changed the outcome in *Robinson*—which involved facts largely analogous to those here—because that case "did not involve a wrongful death action based on *medical malpractice*." *Id.* at 847 (emphasis added). Indeed, it would make little sense to apply the reasoning from *Son* in standard negligence actions, where comparative fault examines whether the plaintiff's conduct contributed to the resulting *injury*, not the defendant's negligent *conduct*. Take the example of a father who carelessly pushes his son into the path of a drunk driver. Under the rule advocated by Ms. Manstrom, the father would be immune from a comparative fault defense because his conduct would not have contributed to getting the driver drunk. That would be a nonsensical result and the Court declines to read *Son* as extending beyond the context of medical malpractice.

*Iqbal*, continued to hold that affirmative defenses need only provide "fair notice" and be alleged "in general terms." *See Kohler*, 779 F.3d at 1019; *Simmons*, 609 F.3d at 1023; *see also Father & Daughters Nevada, LLC v. Moaliitele*, 3:16–cv–926–SI, 2016 WL 7638187, at *2-3 (D. Or. Dec. 19, 2016) (reasoning that "the difference between the rules governing pleading claims and pleading affirmative defenses supports a finding that *Iqbal* and *Twombly* do not apply"). Until the Ninth Circuit or Supreme Court holds otherwise, the Court is bound to follow the Ninth Circuit's holdings that affirmative defenses need only provide fair notice of the defense and be described in general terms. Defendants' pleadings not only identify contributory negligence as an affirmative defense, but briefly set out the theory and facts upon which the defense is based. That is more than sufficient to provide Ms. Manstrom with "fair notice" of the defense.

## CONCLUSION

Based on the foregoing, Defendants have adequately pleaded the affirmative defense of contributory negligence and may, as a matter of law, pursue that defense when, and if, it becomes relevant to defending against Plaintiff's wrongful death claims. Accordingly, the Court finds as follows with respect to the pending motions and F&R:

1. Magistrate Judge Coffin's F&R, ECF No. 45, is ADOPTED in part.
2. Defendants' Motion for Permissive Joinder of Parties, ECF No. 36, is DENIED.
3. Plaintiff's Motion to Strike Counterclaim, ECF No. 37, is DENIED as to the affirmative defense of contributory negligence and GRANTED as to all crossclaims.
4. Plaintiff's Motion for Partial Judgment on the Pleadings, ECF No. 49, is DENIED as to the affirmative defense of contributory negligence and GRANTED as to the affirmative defense of unclean hands.

In addition, and notwithstanding the findings above, any discovery on the affirmative defense of contributory negligence is deferred until after the Court resolves Defendants' dispositive motions on Plaintiff's underlying wrongful death and Section 1983 claims.

IT IS SO ORDERED.

DATED this 6th day of June, 2019.

s/Michael J. McShane
Michael J. McShane
United States District Judge