IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

**ESTATE OF WILLIAM HAN MANSTROM-GREENING, by and through Carol J. Manstrom, Personal Representative**,

    Plaintiff,

v.

**LANE COUNTY; LANE COUNTY PAROLE AND PROBATION; DONOVAN DUMIRE; and GLENN GREENING**,

    Defendants.

Case No. 6:18-cv-530-MC

**OPINION AND ORDER**

**MCSHANE, Judge:**

Plaintiff Carol Manstrom is the mother of William Manstrom-Greening and the personal representative of his estate. William took his own life at the age of 18 on February 14, 2017, using a handgun owned by his father, Glenn Greening. Mr. Greening was a probation officer employed by Defendant Lane County and, at the time of his son's death, was required by his employer to maintain a service weapon. As was his custom, Mr. Greening left his handgun loaded on a desk when he went to bed on the night of William's death.

Both Ms. Manstrom and Mr. Greening were surprised and shocked by William's death. Neither believed William to be suicidal. Despite this fact, Ms. Manstrom brings suit against Mr. Greening and his employer, alleging that they engaged in affirmative conduct that exposed William to a danger that he would not otherwise have faced, and that it is foreseeable that the presence of a loaded firearm in a home would lead to the type of harm that occurred to her son.

Setting aside the recriminations of hindsight, there are no facts in the record to indicate that Mr. Greening or the County were aware, or should have been aware, that William was suicidal in the time leading to his death. Because William's death was not foreseeable, and because Mr. Greening and the County did nothing to encourage or cause the harm, Defendants' Motion for Summary Judgment is GRANTED.

## FACTUAL BACKGROUND

William was 11 months old when Glenn Greening and Carol Manstrom adopted him. Soon after the adoption, Mr. Greening and Ms. Manstrom separated. Manstrom Decl. ¶ 5, ECF No. 83. Ms. Manstrom was granted full custody of William, while Mr. Greening maintained visitation rights. Mitchell Decl. Ex. 37, at 1, 5, ECF No. 81. Two years prior to his death, William moved in with his father without any modification to the custodial agreement established at the time of his parent's divorce. Greening Decl. ¶ 4, ECF No. 65.

On the morning of February 14, 2017, William used his father's duty weapon to take his own life. William was 18 years old. His father was a probation officer employed by Lane County Parole and Probation ("Lane County"). Greening Decl. ¶ 3. Lane County required all probation officers to carry a firearm while on-duty, but the firearm could either be owned by the county or personally owned by the probation officer. Dumire dep. 102:5-15. Mr. Greening's firearm was a handgun that he personally owned and, in addition to possessing it at work, he concurrently used it at home for his personal security.

When Mr. Greening initially came home from work on February 13, 2017, he placed the handgun in a locked safe. Greening dep. 41:16-25. [1] Later that evening, Mr. Greening removed the firearm from the safe and placed it on a desk in the living room of his home. *Id.* at 42:24-

---

[1] All excerpts of deposition transcripts referenced in this Opinion and Order are attached to as exhibits to the Declaration of Caitlin Mitchell (ECF No. 81). All references to depositions appear by the deponent's name, followed by page and line numbers.

43:5; 45:18-23. According to his own testimony, Mr. Greening regularly left the handgun on the desk in the living room for two reasons: (1) to provide home security; and (2) to allow him to more easily prepare for work. *Id.* at 43:3-5; 44:1-6. Mr. Greening did not sleep in the same room as where he stored his handgun and did not wake up when William committed suicide. Mitchell Decl., Ex. 36 at 1, 3–4. Mr. Greening only discovered that the firearm was missing as he was getting ready for work. *Id.* Mr. Greening told arriving officers that he would "never forgive himself for leaving that gun out." Bremer dep. 30:13-21.

At the time of William's death, Lane County lacked any policy regarding the storage of duty weapons outside of the workplace. Dumire dep. 114:25-115:4, 115:16-19; Greening dep. 18:19-23. After the filing of the present lawsuit, Lane County enacted a new safe storage policy requiring that firearms be secured from unauthorized individuals – *i.e.,* in a locked safe, secured with a trigger lock, or disassembled – when the officer is off-duty. Dumire dep. 52:14-25; Mitchell Decl., Ex. 21 at 9.

The Plaintiff makes note of the fact that Mr. Greening had relinquished his right to carry a firearm in 2004 after failing a psychological evaluation in connection with concerns raised by Ms. Manstrom. Eaton dep. 39:3-12. It was not until 2012 that Lane County rearmed Mr. Greening. Greening dep. 86:4-7; 87:1-4. Lane County never administered a subsequent psychological evaluation to Mr. Greening prior to rearming him. *Id.* Mr. Greening testified that he informed his superiors why he was disarmed in 2004, yet multiple individuals in charge of rearming Mr. Greening could not recall if they were aware that Mr. Greening had failed a psychological exam. *Compare* Greening dep. 86:4-88:19 *with* Brown dep. 26:20-27:8, 29:19-30:18 *and* Fox dep. 13:16-19, 14:1-3. There is nothing in the record to suggest that Mr. Greening suffered from mental instability at the time of William's death.

**STANDARDS**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. An issue is "genuine" if a reasonable jury could return a verdict in favor of the non-moving party. *Rivera v. Phillip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is "material" if it could affect the outcome of the case. *Id.* The Court reviews evidence and draws inferences in the light most favorable to the non-moving party. *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)). When the moving party has met its burden, the non-moving party must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e)).

**DISCUSSION**

All Defendants move for summary judgment on Plaintiff's due process claims and Mr. Greening moves for summary judgment on Plaintiff's wrongful death/ negligence claim.

**I. Due Process: State-Created Danger**

Plaintiff argues that Lane County, Donovan Dumire,[2] and Mr. Greening undertook affirmative conduct that exposed Mr. Manstrom-Greening to a danger he would not otherwise have faced. Defendants counter that Plaintiff has failed to make out a successful due process claim.

Generally, a state actor is not liable under the due process clause for its omissions. *Pauluk v. Savage*, 836 F.3d 1117, 1122 (9th Cir. 2016). That said, the Ninth Circuit recognizes

---

[2] Donavan Dumire was the manager of Lane County Parole and Probation and, as manager, he implemented firearm policies for Lane County. Dumire dep. 15:24-16:2; 29:21-30:15; 44:11-20; 45:10-13.

the state-created danger doctrine. *See e.g.*, *id.*; *Wood v. Ostrander*, 879 F.2d 853 (9th Cir. 1989). To make out a state-created danger claim, a plaintiff must first show that "state action *affirmatively* places the plaintiff in a position of danger, that is, where state action creates or exposes an individual to a danger which [they] would not have otherwise faced." *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1061 (9th Cir. 2006) (emphasis added). Second, "the affirmative act must have exposed the plaintiff to 'an actual, particularized danger,' and the resulting harm must have been foreseeable." *Pauluk*, 836 F.3d at 1125 (quoting *Kennedy*, 439 F.3d at 1063) (citing *Lawrence v. U.S.*, 340 F.3d 952, 957 (9th Cir. 2003)). Third, plaintiff must show that the defendant's affirmative conduct occurred either willfully or with deliberate indifference to a known or obvious danger. *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 974 (9th Cir. 2011).

**A. Lane County and Mr. Dumire**

In the present case, Plaintiff must show that Lane County and Mr. Dumire acted affirmatively and with deliberate indifference in creating a foreseeable injury to William. *Lawrence*, 340 F.3d at 957. Plaintiff points to Lane County's lack of policy governing the storage of duty weapons at home and Lane County's decision to rearm Mr. Greening in 2012. Pl.'s Resp. to Def.'s Mot. for Summ. J. 38, ECF No. 80. In response, Lane County and Mr. Dumire urges the Court to carefully consider the precise danger Mr. Manstrom-Greening faced, specifically, his undisclosed suicidal ideation—a danger neither known nor state created. Def.'s Lane County and Dumire Mem. 6, ECF No. 67.

Lane County may be liable for Mr. Greening's conduct if Mr. Greening acted pursuant to a policy or custom. *See Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658, 694 (1978). But here, Plaintiff is unable to point to a policy or custom that "*affirmatively* place[d] the plaintiff in a position of danger." *Kennedy*, 439 F.3d at 1061 (emphasis added). A survey of

state-created danger cases in the Ninth Circuit illustrates that the state-created danger doctrine is only applicable in cases where harm was foreseeable and particularized against individuals. *Pauluk*, 836 F.3d at 1125 (finding sufficient evidence in the record that transferring plaintiff to a mold-infested facility would lead to foreseeable injury); *Munger v. City of Glasgow Police Dept.*, 227 F.3d 1082, 1087 (9th Cir. 2000) (finding that police officers' decision to eject plaintiff from bar and force him into sub-freezing temperatures would lead to foreseeable injury); *L.W. v. Grubbs*, 974 F.2d 119, 122 (9th Cir. 1992) (finding that placing nurse in close proximity to individual with violent sexual tendencies would lead to foreseeable injury); *Kennedy*, 439 F.3d at 1063 (finding that failure to notify plaintiff that police had talked to potentially violent neighbor, even after plaintiff requested prior notice to contact with neighbor, would lead to foreseeable injury); *Penilla v. Huntington*, 115 F.3d 707, 710 (9th Cir. 1997) (finding that placing plaintiff back in his home and cancelling medical services, even when it was apparent that plaintiff needed medical attention, would lead to foreseeable injury).

Plaintiff broadly argues that "Lane County's actions in authorizing and requiring [Mr.] Greening to carry a duty weapon . . . [and] in failing to have a policy addressing safe storage of weapons while off duty . . . [is] affirmative conduct that placed [Mr.] Manstrom-Greening at increased risk." Pl.'s Resp. to Def.'s Mot. for Summ. J. 38. But "the danger-creation exception . . . does not create a broad rule that makes state officials liable under the Fourteenth Amendment whenever they *increase the risk of some harm to members of the public*." *Huffman*, 147 F.3d at 1061 (emphasis added).

Lane County and Mr. Dumire's actions were not affirmative conduct. The case of *Huffman* best illustrates this point. In *Huffman*, a decedent's estate sued Los Angeles County after the decedent was shot and killed by an off-duty police officer. 147 F.3d at 1059–60. The

plaintiff alleged that while Los Angeles County had a policy requiring police officers to carry firearms while off-duty, they "failed to warn its deputies about the dangers of carrying firearms while intoxicated." *Id.* Prior to the fateful shooting, the police officer had consumed multiple cocktails, got into a verbal altercation with the decedent, challenged the decedent to a fistfight, followed the decedent out of the bar, and finally, in the ensuing scuffle, fatally shot the decedent in the chest. *Id.* at 1060. While the decedent's estate conceded that Los Angeles County had a policy against police officers acting drunk and disorderly while off-duty, they argued that the department failed to maintain a policy that specifically dealt with carrying firearms while intoxicated. *Id.* The *Huffman* court disagreed, finding that even absent such a policy, the off-duty officer's actions were unforeseeable. *Id.* at 1061. As in *Huffman*, Lane County provided its probation officers with firearm training. What they lacked was a policy that included training for officer's who owned their own service weapon and who carried the weapon at home or on their person when off duty. Rauschert dep. 29:4-13. While the Court recognizes that such a policy may have reduced the danger faced by William in his father's house, it does not establish that Lane County's existing polices and trainings violated the Constitution. *Huffman*, 147 F.3d at 1060–61 (citing *DeShaney v. Winnebago Cty. Dept. of Soc. Serv.*, 489 U.S. 189, 195 (1989)).

Even if Plaintiff could make a case that a policy/ training failure was affirmative conduct that led to William's death, it is undisputed that Lane County could not have foreseen the injury. Mr. Greening testified that he never informed his supervisors that William was suicidal, while Mr. Dumire testified that he was unaware of any mental health issues William faced. Greening dep. 160:14-17; Dumire dep. 172:11-14. Likewise, Ms. Manstrom had not expressed any concerns about her son's mental health to Lane County since 2005, even testifying that her son's suicide came as "a complete surprise." Manstrom dep. 68:1-3, 68:10-15, 86:12-17, 87:16-88:2. It

would be remarkable to require the County to foresee a harm that William's own parents could not imagine. Based on these surrounding facts, William's private act of committing suicide was "not foreseeable by the County [or Mr. Dumire]." *Huffman*, 147 F.3d at 1061.

Plaintiff's contention that Lane County erred in rearming Mr. Greening without a subsequent psychological evaluation in 2012 also fails. The rearming of Mr. Greening by Lane County is not affirmative conduct that placed William in a position of danger. First, because the decision took place five years prior to William's suicide, the nexus between the injury and rearming of Mr. Greening is too attenuated to allege that Lane County was aware of an actual, particularized danger. *Pauluk*, 836 F.3d at 1125 (quotation and citation omitted). Second, for the same reasons discussed above, the harm faced by William was not a danger that Lane County could foresee. *Id.*

Finally, with respect to the due process claim, Plaintiff cannot prove that Lane County or Dumire acted willfully or with deliberate indifference to a known or obvious danger. *Patel*, 648 F.3d at 974. As the evidence indicates, Lane County was not indifferent to the importance of firearm safety, nor indifferent to William's alleged vulnerability to suicide. Rather, while Lane County provided probation officers with safety training and required safe storage of firearms on-duty, they remained as unaware of William's suicidal thoughts as William's parents. *See* Dumire dep. 172:11-14; Greening dep. 160:14-17; Manstrom dep. 68:1-3, 68:10-15, 86:12-17, 87:16-88:2. Viewing those facts in a light most favorable to Plaintiff, they do not arise to a violation of a constitutional right. *Patel*, 648 F.3d at 974; *Pauluk*, 836 F.3d at 1125.

Based on the foregoing reasons, Lane County and Mr. Dumire motion for summary judgment is GRANTED on Plaintiff's due process claim.

## B. Mr. Greening

Plaintiff argues that "Mr. Greening's actions in leaving the weapon open, obvious, and unsecured overnight are all affirmative conduct that placed [Mr.] Manstrom-Greening at increased risk." Pl.'s Resp. to Def.'s Mot.'s for Summ. J. 38. Mr. Greening counters that Plaintiff's theory regarding "ease of access" to the firearm fails to comprehend the true danger faced by his son, namely, William's own suicidal ideation. Greening's Reply to Pl.'s Resp. to Mot. for Summ. J. 2, ECF No. 98.

As a preliminary matter, Mr. Greening would only be liable under the state-created danger doctrine if he was acting under "color of state law." *McDade v. West*, 223 F.3d 1135, 1139 (9th Cir. 2000) (citing *Parrat v. Taylor*, 451 U.S. 527, 535 (1981) *overruled on other grounds by Daniel v. William*, 474 U.S. 327, 330–31 (1986)). For an act to be under color of state law "the acts . . . must be performed while the officer is acting, purporting, or pretending to act in the performance of his or her official duties." *Id.* (citations omitted); *see also West v. Atkins*, 487 U.S. 42, 49–50 (1988) ("A public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law.").

While Mr. Greening left this matter unaddressed in his briefing, at oral argument counsel for both defendants alleged that Plaintiff was blurring the lines on whether Mr. Greening's ownership of the handgun constituted an act under color of state law. While the handgun was Mr. Greening's duty weapon, he still privately owned the firearm and William's death occurred while he was off duty and sleeping in his home. From Plaintiff's perspective, Mr. Greening had a continuous job duty to take care of his duty weapon, regardless of whether he was at home or at work. As explained by Lieutenant Larry Brown, "Your duty weapon[,] [i]t's assigned to you. It's not a universal weapon for you to pass around to other people. You're responsible for anything

that happens with that weapon. . . . What you do with it is your responsibility." Brown dep. 63:5-64:6. The court is hesitant to accept that Mr. Greening's actions in his house with a privately owned handgun constitute an action under color of state law. But, viewing this testimony in a light most favorable to Plaintiff (and in consideration that the defense seemed to have waived the argument in their briefing), the Court will assume that Mr. Greening's duty surrounding his firearm was constant and, therefore, he was acting under color of state law.

Nevertheless, Plaintiff's state-created danger claim fails because Mr. Greening's actions were neither affirmative conduct nor actions undertaken with deliberate indifference to a known or obvious danger. The harsh and depressing reality in this case is that the harm faced by William was his independent decision to take his own life.[3] Plaintiff's theory relies on an argument that the affirmative conduct undertaken by Mr. Greening was in making a gun accessible in a home occupied by adults. But such an act did not make William suicidal, it merely facilitated his tragic decision. Both Ms. Manstrom and Mr. Greening testified that they were unaware of their son's suicidal ideations and were shocked when he acted upon them. Manstrom dep. 68:1-3, 68:10-15, 86:12-17, 87:16-88:2; Greening Decl. ¶¶ 5–7. Plaintiff urges the Court to consider statistics illustrating that William's age and access to firearms made him more susceptible to suicide. Mot. for J. Notice 2–3, ECF No. 88. Even taking that data into account, the facts of this case illustrate that Mr. Greening's actions did not rise to "deliberate

---

[3] Historically, in almost all capacities, suicide is a difficult claim to impose liability on a defendant because of a reluctance to assign responsibility for actions that are ultimately undertaken by the plaintiff. *See* SUSAN STEFAN, RATIONAL SUICIDE, IRRATIONAL LAWS 101, AT 15–16 (2016) ("The law has always assumed that people are legally responsible for their suicides and suicide attempts. . . ."). Focusing on the state-created danger doctrine in the context of suicide reveals that "nearly all cases . . . have rejected liability on the merits, finding in most cases that the municipality did not create the danger – i.e. the self-destructive impulse – through an affirmative act, and in the balance of cases that the state agents did not act with deliberate indifference or in a way that shocked the conscience." *Dunlap v. City of Sandy*, No. 3:17-cv-01749-YY, 2018 WL 4782263, at *8 (D. Or. June 4, 2018) (quoting *Cutlip v. City of Toledo*, 488 F. App'x 107, 115–16 (6th Cir. 2012)).

indifference to a known or obvious danger." *Patel*, 648 F.3d at 974 (citation and quotation omitted).

Because Mr. Greening's act in leaving the firearm out fails to satisfy the first two elements of the state-created danger doctrine, Mr. Greening's motion for summary judgment on the due process claim is GRANTED.

## II. Negligence[4]

Plaintiff argues that Mr. Greening's decision to leave the handgun on the desk was a negligent act that foreseeably led to Mr. Manstrom-Greening's suicide. Plaintiff's argument is that Mr. Manstrom-Greening faced a generalized risk of injury from the firearm, regardless of whether that injury occurred intentionally or accidentally.

To sustain a negligence claim, Plaintiff must prove the following:

> (1) that defendant's conduct caused a foreseeable risk of harm, (2) that the risk is to an interest of a kind that the law protects against negligent invasion, (3) that defendant's conduct was unreasonable in light of the risk, (4) that the conduct was a cause of plaintiff's harm, and (5) that plaintiff was within the class of persons and plaintiff's injury was within the general type of potential incidents and injuries that made defendant's conduct negligent.

*Son v. Ashland Comm. Healthcare Serv.'s*, 239 Or. App. 495, 506 (2010) (quoting *Solberg v. Johnson*, 306 Or. 484, 490–91 (1988)).

Oregon's negligence law is unique and turns on whether the defendant's conduct resulted in a reasonably foreseeable and unreasonable risk of harm to a protected interest held by the plaintiff. *Towe v. Sacagawea, Inc.*, 357 Or. 74, 86 (2015) (citing *Fazzolari v. Portland School Dist. No. 1J*, 303 Or. 1, 17 (1987)). Here, the Court must consider "the factual setting of the case" when deciding whether "the harm suffered by the plaintiff is of the same general kind to be anticipated from the defendant's allegedly negligent conduct." *Piazza v. Kellim*, 360 Or. 58, 89

---

[4] Plaintiff also brought a negligence claim against Lane County and Mr. Dumire, but neither of these defendants moved for summary judgment on this specific claim. Therefore, the Court only addresses the negligence claim against Mr. Greening.

Page 11 – OPINION AND ORDER

(2016) (en banc). Oregon courts rarely decide issues of negligence on summary judgment, but "a court can decide that the risk to the plaintiff caused by defendant was unforeseeable as a matter of law." *Miller v. Tabor West Investment Co., LLC*, 223 Or. App. 700, 711 (2008) (citing *Donaca v. Curry Co.*, 303 Or. 30, 38 (1987)).

Oregon has determined that "a harm may be legally unforeseeable if the defendant's conduct constituted 'mere facilitation' of [a] third person's intervening intentional criminal act." *Miller*, 223 Or. App. at 711 (quoting *Buchler v. Oregon Corrections Div.*, 316 Or. 499, 511–12 (1993) (en banc)). In other jurisdictions, courts have determined that suicide is an unforeseeable consequence of a defendant's negligence, but Oregon has never addressed the question. *See Jutzi-Johnson v. United States*, 263 F.3d 753, 755 (7th Cir. 2001) ("The suicide is said to be a supervening cause of the victim's loss of his life, breaking the chain of responsibility that would otherwise link the loss to the negligent act."). Because the question is unaddressed, the Court's role is to "predict how the highest state court would decide the issue." *Lewis v. Tel. Emps. Credit Union*, 87 F.3d 1537, 1545 (9th Cir. 1996); *see also Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 925 (9th Cir. 2004).

The Second Amendment guarantees an individual the "right to possess and carry weapons in case of confrontation." *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008). Mr. Greening testified that he regularly left his handgun, which he owned, on a desk in his living room for protection. Greening dep. 42:24-43:5; 45:18-23. The only other occupant of the home was a young adult, William, who had lived there for some time without incident despite the regular presence of the firearm. Prior to the morning of February 14, 2017, William had never attempted suicide or expressed suicidal thoughts. Both Ms. Manstrom and Mr. Greening testified that their son's suicide was a complete shock to them. Manstrom dep. 68:1-3, 68:10-15, 86:12-

17, 87:16-88:2; Greening Decl. ¶¶ 5–7. Under these facts, the Court finds that Mr. Manstrom-Greening's suicide was not a foreseeable consequence of Mr. Greening's decision to leave his handgun on his desk on Feb. 13 of 2017. William made a choice that morning that was, at most, facilitated by Mr. Greening's decision to leave out the firearm. But "mere facilitation" of an intervening act does not make Mr. Greening's conduct negligent because the harm was unforeseeable. *See Miller*, 223 Or. App. at 715 ("In sum, even recognizing that the concept of foreseeability refers to 'generalized risks of the type of incidents and injuries that occurred rather than predictability of the actual sequence of events,' in the absence of more *specific knowledge of the risk of the type of harm that befell plaintiff*, we conclude that defendants' conduct constituted 'mere facilitation' of . . . intervening . . . conduct." (emphasis added) (quoting *Fazzolari*, 303 Or. at 21)).

As Plaintiff's counsel expressed during oral argument, at the heart of their argument is the position that all harm is foreseeable when a loaded gun is left unsecured in a home. Setting aside Second Amendment concerns, this is not the law. Certainly there are facts (such as a toddler having access to the gun) that could make the harm foreseeable. This is why the case was able to survive a Motion to Dismiss. It is possible that having a gun in a house occupied by someone known to be suicidal is akin to handing the car keys to someone who is known to be intoxicated. That is not our facts. The facts here are that William was a young adult who lived in his father's home without exhibiting any signs that would portend the actions he took. While the gun was the instrument of his death, his death with the gun was not foreseeable to either of his parents.

When a plaintiff is clearly responsible for the acts that resulted in their injury, summary judgment may be granted. *Vanderveen v. Lewis*, 48 Or. App. 105, 108 (1980). As stated by the

*Vanderveen* court, because "Plaintiff's . . . injuries were the result of her own actions," the trial courts decision to grant summary judgment was not error. *Id.*

Based on the foregoing reasons, Mr. Greening's Motion for Summary Judgment on Plaintiff's negligence claim is GRANTED.

### III. Supplemental Jurisdiction

Because the Court has dismissed Plaintiff's federal claims, the only remaining claim is the wrongful death claim against Lane County and Mr. Dumire. "[A] district court may decline to exercise supplemental jurisdiction over a claim . . . if the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). The Court presumes that "in the *usual* case in which federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state law claims." *Gini v. Las Vegas Metro. Dep't*, 40 F.3d 1041, 1046 (9th Cir. 1994) (emphasis in original) (citations omitted); *see also Schultz v. Sundberg*, 759 F.2d 714, 718 (9th Cir. 1985) ("Generally, dismissal of federal claims before trial dictates that the pendent state claims should also be dismissed."). The Court's decision on whether to exercise supplemental jurisdiction is "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009). When considering whether to retain supplemental jurisdiction, the Court considers principles of "judicial economy, convenience, fairness, and comity." *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 911 (9th Cir. 2011). If the Court dismisses state law claims for lack of jurisdiction, they are dismissed without prejudice. *Gini*, 40 F.3d at 1046.

Based on the dismissal of wrongful death claim filed against Mr. Greening, it is hard for the court to see how Plaintiff can maintain the remaining state law claim against the County or Mr. Dumire. Plaintiff's counsel and counsel for Lane County are ORDERED to confer and file a

status report with the court within fourteen (14) days, indicating whether they can agree to a dismissal with right to appeal or a remand to state court. If the parties cannot reach a mutual decision, it is the intention of the court to decline jurisdiction and dismiss without prejudice.

## CONCLUSION

Defendant Glenn Greening's motion for summary judgment, ECF No. 64, is GRANTED. Defendants Lane County and Donovan Dumire's motion for summary judgment, ECF No. 67, is GRANTED. Plaintiff and Lane County are ORDERED to confer and file a status report within fourteen (14) days regarding the final remaining state law claim.

IT IS SO ORDERED.

DATED this 23rd day of December, 2019.

                                                  s/Michael J. McShane
                                                  Michael J. McShane
                                                  United States District Judge